IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 3:08-cr-209-MHT |
| | ) | [wo] |
| CARLOS L. BROOKS | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court are the Defendant's *Motion to Suppress Statements* and

*Amended Motion to Suppress* (Doc. Nos. 32 and 55), and the Government's *Responses* (Doc.

Nos. 34 and 58).  Defendant Carlos Brooks (hereinafter "Brooks" or "Defendant") seeks to

exclude evidence seized during his arrest on June 13, 2008, and statements he later gave to

law enforcement concerning his arrest.  After the evidentiary hearing and due consideration

of briefs, arguments, exhibits, and applicable law, the Magistrate Judge recommends that the

District Court **DENY** the motions to suppress.

### I.  FINDINGS OF FACT

On June 13, 2008, Officer Robert P. Cotney ("Cotney") was on patrol in Alexander

City, Alabama.  As he traveled along I street, Cotney came to the intersection of O Street and

I Street, a three-way stop.  Cotney saw the defendant, Carlos Brooks ("Brooks") run a stop

sign as he turned left onto I Street.  Shortly after Officer Cotney put on his blue light, Brooks

pulled over.  Cotney walked up to the driver's side window and saw Brooks was alone in the

car.  In plain view, a small quantity of marijuana was  in a bag on the driver's side rear

passenger seat.  Cotney told Brooks he stopped him because he ran a stop sign.  Brooks argued that he had stopped for the traffic sign.  Officer Cotney pointed out to Brooks that Brooks was also not wearing a seatbelt in violation of Alabama law.  Brooks conceded he was not wearing a seatbelt.  Officer Cotney told Brooks to produce his license, insurance and registration.  Brooks opened the glove box and pulled out some documents.  Marijuana residue fell from some of the papers Brooks took from the glove box.  Cotney took  the items to his car to run the information.

Cotney wrote Brooks a citation for running the stop sign and came back to the car. After  Cotney explained the citation and gave the documents back to Brooks, he told Brooks to step out of the car.  Cotney pointed to the marijuana on the back seat and Brooks began to rake the marijuana off the back seat.   Brooks became upset when Cotney told Brooks to put his hands on the car.   When Cotney told Brooks he was going to pat him down, Brooks ran away.  Officer Michael Howell ("Howell") came to the scene just as Brooks began to run away.  Howell and Cotney chased Brooks.  Cotney heard a metallic sound when Brooks fell down on M. Street.  Brooks quickly got up after he fell and continued to flee.  Brooks fell down once more on J street, and again Cotney heard a metallic sound.  Cotney was close enough to discern the metallic sound came from the pistol Brooks had in his hands.  Cotney drew his weapon and told Brooks to drop his pistol.  A struggle began and only after a third officer, Officer Spivey, came to help were the officers finally able to handcuff Brooks. Brooks was taken to the Tallapoosa County Jail and booked on state charges.

On July 15, 2008, Special Agent Timothy Fitzpatrick ("Fitzpatrick") from the Bureau

of Alcohol, Tobacco, and Firearms ("ATF"), and Investigator Luke Sibley interviewed Brooks in the Tallapoosa County Jail.  Agent Fitzpatrick told Brooks he wanted to ask some questions about the firearm he had on June 13, 2008.  Fitzpatrick told Brooks about his rights against self incrimination and explained the ATF waiver of rights form.  Brooks had no questions about the form and did not invoke his right to remain silent.  Brooks signed his name and printed his name in the appropriate spaces on the waiver form to indicate his consent.  Brooks said he did not finish high school but he was street smart.  Brooks admitted he had possessed the firearm on June 13, 2008.  Brooks never gave any indication that he did not understand his rights.  Fitzpatrick did not use any force, coercion or promises to elicit the incriminating statements from Brooks.

Brooks testified about his interview with Fitzpatrick.  He said Fitzpatrick told him that "if I didn't talk to him that I would be in a whole lot of trouble," and that if he talked to him he "wouldn't have to be indicted by the federal prison."   Brooks further testified that Fitzpatrick did not tell him the paper he signed was a waiver of rights form, or that his signature thereon meant he was waiving his right to an attorney and his right to remain silent. On cross-examination, Brooks acknowledged this was not his first criminal prosecution, but he could not remember his rights being read to him at any time in the past because of his short and long-term memory loss.  Fitzpatrick rebutted Brooks's testimony by repeating that he did not tell Brooks he would not be indicted if he talked about his arrest, and that he did, in fact, conduct a full review of the waiver form and its meaning with Brooks.

On November 19, 2008, the Grand Jury for the Middle District of Alabama indicted

Brooks for being a felon in possession of a firearm.  *See* Doc. 1.  On May 22, 2009, Brooks filed a motion to suppress his statement of July 15, 2008, and amended his motion on July 15, 2009 to suppress the firearm seized during his arrest.  *See* Docs. 32 and 55.  Brooks's motions assert his statement of July 15, 2008 was not given voluntarily, knowingly, or intelligently; and the traffic stop which led to his arrest was prolonged in violation of the Fourth Amendment.

The United States's  responses argue that (1) Brooks's statement was knowingly, voluntarily, and intelligently made after Fitzpatrick read and explained the rights waiver; and (2) the extension of the traffic stop did not violate the Fourth Amendment because Cotney observed marijuana in plain sight during his lawful traffic stop of Brooks.  The Court heard argument and received evidence from the parties on July 29, 2009.

## II.  DISCUSSION AND ANALYSIS

### A.  <u>The Duration of the Traffic Stop</u>

The Court first addresses Brooks's argument that the traffic stop was illegally prolonged in violation of the Fourth Amendment.  Brooks argues that Cotney should have released him after processing the traffic violation because there was no basis for a reasonable, articulable suspicion that criminal activity was occurring.  Longstanding precedent clearly states that the "Fourth Amendment requires that searches and seizures be reasonable.  A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing."  *City of Indianapolis v. Edmond*, 521 U.S. 32, 37, 121 S.Ct. 447, 451 (2000).

Alabama law requires motor vehicles approaching a stop sign to stop "at a clearly

marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it." Ala.Code 1975 § 32-5A-112. Brooks played a DVD recording from Cotney's patrol car which showed Brooks's car driving uphill on O Street and past the stop sign at the intersection of O and I Streets. Brooks testified that he stopped his car before driving past the stop sign, but that his vehicle - an automatic shift - rolled downhill before he could accelerate through the intersection. Brooks testified Cotney only saw his car after the full stop short of the intersection. Regardless of whether Brooks testified truthfully about stopping his vehicle in the moments before the camera in Cotney's car captured him driving past the stop sign, the recording shows that Cotney saw Brooks proceeding through the intersection without coming to a full stop as required by Ala.Code 1975 § 32-5A-112. This view, captured in the recording, provided reasonable grounds for Cotney to stop Brooks for a traffic violation. *See United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990) (police may stop a car "'[w]hen there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.").

When Cotney came to the drivers' side door, he could see marijuana on the rear seat of the car directly behind Brooks. While Brooks looked for his insurance documents, Cotney saw small particles of marijuana falling from the papers. Cotney testified he had seen marijuana before and believed the substance in Brooks's car was, in fact, marijuana. Thus,

it was in the course of addressing the traffic violation that Cotney saw an illegal substance in the front and rear of the car.  "The 'plain view' doctrine allows a warrantless seizure where '(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.'" *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006).

Cotney's plain view sighting of marijuana in Brooks's car provides a quick answer to the argument that the stop was unlawfully prolonged.  Any prolonging of the stop here arose because Cotney saw the illegal substance in Brooks's car.  The Supreme Court described *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996), as a case which "involved a traffic stop as the prelude to a plain-view sighting and arrest on charges wholly unrelated to the basis for the stop."  *Whren*, 517 U.S. at 812, 116 S.Ct. at 1773.  This description applies to the instant case because the video clearly shows Cotney had probable cause to believe Brooks violated the traffic code, and upon making the stop, saw a prohibited substance.  *See also Georgia v. Randolph*, 547 U.S. 103, 118, 126 S.Ct. 1515, 1525 (2006) ("And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause.").  Cotney's decision to prolong the stop by arresting Brooks merely constituted "further action" which was fully supported by the plain-view sighting of marijuana.

### B.  The Admissibility of Brooks's Statement

Brooks challenges the admissibility of his statement to Agent Fitzpatrick based upon the head and shoulder injuries he sustained in a workplace accident in March, 2008. Brooks received prescriptions for Oxycodone, Lortab, and Tramadol, and was purportedly impaired by dizziness, disorientation, and memory problems on the dates of his arrest and interview by Fitzpatrick. In support of his argument for mental impairment, Brooks deposed Dr. Thomas Boll, a board certified neuropsychologist, who examined Brooks on June 26, 2009.[1] Dr. Boll didn't think Brooks could read and understand the ATF waiver of rights form without assistance, but that he could understand it if someone explained the contents to him. Dr. Boll based this opinion on Brooks's generally poor literacy levels, and did not attribute his cognitive deficiencies to a head injury.

"[T]he government cannot introduce a suspect's statement taken without the presence of an attorney without first showing that the suspect made a voluntary, knowing, and intelligent waiver of his right to counsel." *Hart v. Attorney General of the State of Florida*, 323 F.3d 884, 891(11th Cir. 2003), citing *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). "[O]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Hart, id*. at 892, quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986). *See also Land*

---

[1]The deposition was conducted in the undersigned's courtroom so that Dr. Boll's opinions, and the necessary credibility determinations assigned to his testimony, are factored into this Report and Recommendation.

*v. Allen*, ___ F.3d. ___, 2009 WL 1979258, *3 (11th Cir. July 10, 2009) (restating the "totality of the circumstances" test in assessing the admissibility of statements).

Brooks argues his signature on the ATF waiver form is invalid because of his head injury and the ensuing mental impairment.  Citing *United States v. Barbour*, 70 F.3d 580 (11th Cir. 1995), he argues the waiver is invalid because Fitzpatrick took advantage of his mental limitations by telling him that his statements could not be used against him.  He does not allege any other mental or physical coercion was exercised by Fitzpatrick.  The Court resolves the conflicting testimony from Brooks and Fitzpatrick on this issue by finding that Fitzpatrick, not Brooks, testified credibly about the interview, and consequently, the validity of Brook's signature on the waiver form.  Taking Dr. Boll's opinion testimony that Brooks could understand the form if someone explained it to him, the Court finds Brooks understood the form because Agent Fitzpatrick explained the form to him.  The waiver was thus a knowing, voluntary, and intelligent waiver of Brooks's rights.

Support for this conclusion is found in the "totality of the circumstances"of Fitzpatrick's interview with Brooks.  A "totality" approach permits the Court to infer Brooks was familiar with his rights when in the custody of law enforcement officers.  *See United States v. Gillaum*, 372 F.3d 848, 857 (7th Cir. 2004) (applying "totality" test and factoring in defendant's past arrests and familiarity with the criminal justice system); *United States v. Wright*, 2009 WL 1310132, *4 (S.D. Fla. May 11, 2009) (finding officers properly advised defendant of his rights, and his knowledge of the same from past arrests).  The Court discounts Brooks's statement that he could not specifically remember receiving a recitation

of the rights warnings during past arrests, but he could not specifically remember those instances.[2]  Fitzpatrick had the impression from his initial conversation with Brooks that though he lacked formal education, Brooks's previous arrests and convictions gave him experience with the criminal justice system.  The two men discussed sports, and Brooks told Fitzpatrick that he was "street smart."  Fitzpatrick emphatically stated that he had no indication that Brooks could not comprehend or understand the waiver form, having read the rights to Brooks verbatim, and then providing a "plain English" explanation.  Brooks did not tell Fitzpatrick that he could not understand the form or its meaning, as explained to him.

Brooks's statement to Agent Fitzpatrick is admissible, as the totality of the circumstances support a finding that Brooks made a knowing, voluntary, and intelligent waiver of his right to counsel.  Brooks's claim of mental impairment is not accepted where he was familiar with the criminal justice system, was able to engage in conversation before the interview, and did not express an inability to understand the significance of the waiver.  The statement to Fitzpatrick reflected both an uncoerced choice and the requisite level of comprehension for admission in the prosecution against him.  *Hart, id.*

### III.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's *Motion to Suppress Statements* and *Amended Motion to Suppress* (Docs. 32 and 55) be **DENIED**.

---

[2]The indictment against Brooks recites three prior convictions for robbery in the late 1990s.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **August 26, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 13th day of August, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE