IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:08cr209-MHT |
| CARLOS L. BROOKS | ) | (WO) |

OPINION AND ORDER

This cause is now before the court on the question of whether defendant Carlos L. Brooks has the mental capacity to stand trial.  Specifically, the question is whether "there is reasonable cause to believe that [he] may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a). Having reviewed all the evidence, including that presented at a hearing held on June 3, 2010, the court

concludes that Brooks has the mental capacity to stand trial.

## I. BACKGROUND

A one-count indictment charges that Brooks, having previously been convicted of a felony, did knowingly possess a firearm, in violation of 18 U.S.C. 922(g)(1).

Based upon, "his observations of [Brooks's] demeanor and communications," defense counsel requested a mental-competency evaluation prior to trial. Mot. at 1 (Doc. No. 80). Counsel stated that Brooks had suffered a head injury just months before the alleged offense and that, since the accident, he "has been on several powerful medications ... [and] has complained of blackouts and other symptoms of neurological damage or drug interaction." Id. Counsel further stated that Brooks "is unable to describe to counsel the events made the subject of the

2

charges against him in this case, as he claims to have been in an unconscious or dissociative state during all or part of those events." Id.

Upon consideration of defense counsel's request, Magistrate Judge Terry F. Moorer ordered that Brooks undergo a psychiatric or psychological examination, pursuant to 18 U.S.C. §§ 4241, 4242, and 4247(b).[1] The magistrate judge further ordered that, pursuant to 18 U.S.C. § 4247(c), the examining psychiatrists or psychologists "conducting the mental examination of [Brooks] report in writing ... their findings, opinions and conclusions as to ... whether [he] may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his own defense." Order at 1 (Doc. No. 81).

───────────────

    1. 18 U.S.C. § 4242 addresses the "[d]etermination of the existence of insanity at the time of the offense."

3

Brooks was then transferred to the Federal Correctional Institution at Fort Worth, Texas. He was there examined and evaluated from November 20, 2009, through January 4, 2010, by Robert Johnson, Ph.D., a licensed psychologist. Over the course of this evaluation, Brooks underwent a number of psychological tests, including the Evaluation of Competency to Stand Trial - Revised, the Personality Assessment Inventory, the Conners' Continuous Performance Test II, the Wisconsin Card Sort Test, the Rey Auditory Verbal Learning Test, the Rey Osterreith Complex Figure Test, the Trail Making Test A and B, the Rey Fifteen Item Test, the Test of Memory and Malingering, and the Wechsler Abbreviated Scale of Intelligence.[2] Brooks also "participated in clinical interviews and his behavior was observed by psychology and correctional

---

2. According to Dr. Johnson, Brooks returned invalid results on some of these tests.

4

staff to include telephone monitoring." Dr. Johnson's Report at 3 (Doc. No. 86).

Dr. Johnson filed his report on Brooks's competency to stand trial on January 22, 2010.[3] He stated that: It is his "professional opinion ... that Mr. Brooks is presently competent to proceed. He does not currently present with a mental disease or defect that precludes his ability to understand the nature and consequences of his charges." Id. at 16. He also determined that "Brooks has a general understanding of the role of the various court personnel and court proceedings." Id. at 12. Specifically, he noted that,

> "When asked what the role of the judge is, [Brooks] stated, 'He's supposed to help me. He's the one who can find me guilty or not guilty.' When asked who represents him in court he stated, 'My lawyer, Mr. Lewis.' When asked what the job

---

3. The report is dated January 8, 2010.

5

>of the district attorney is, he stated, 'He's the guy who talks against me. I don't know why he talks against me because I don't remember what happened.' When asked what the role of the jury is, he stated, 'The jury finds you innocent or not innocent. I'm going to have a judge not a jury.' ... When asked if he should speak to the district attorney without his attorney present, he stated, 'No, because he's not trying to get me any help.' When asked what he is being charged with, he stated[,] 'They said I had a gun. ... They said I went to jail before, but I don't remember.' When asked if he would testify in court at his attorney's request, he stated, 'I'd just tell them what I know, but I can't tell the judge what I don't remember.'"

Id.

Dr. Johnson acknowledged that, "Intelligence testing was completed and [Brooks's] scores fell within the Mildly Mentally Retarded range of intelligence, as inferred from his Full Scale I.Q. score of 64 on the Wechsler Abbreviated Scale of Intelligence." Id. at 8. "This score is equivalent

6

to the 1st percentile ranking and is indicative that his test performance was exceed by 99 percent of those within the standardization sample." Id. at 8-9. However, Dr. Johnson noted that, "Malingering assessment of memory/cognitive deficits was performed and Mr. Brooks responded in a manner consistent with individuals who may not have been forthright in their responses ... [and his] results[,] therefore, should be interpreted with caution." Id. at 8. Dr. Johnson also identified several "[v]ariables inconsistent with a diagnosis of mental retardation," including: "a lack of school documentation reflecting said diagnosis; [his] father's report of [Brooks] being awarded a college scholarship for athletics; police report of [Brooks] possessing a valid driver's license; and average daily living skills." Id. at 9.

Dr. Johnson further noted that, "Brooks indicated he was unable to read or write; however, he completed a Federal Bureau of Prisons Psychology Services

7

Questionnaire." Id. at 9. On that form he identified his hometown as "AlexCity, AL 35010," acknowledged prior treatment at the "UAB Tramua Center," and stated that he has "long and short term memorey migrain headaches." Id. During monitored phone calls, Brooks was also heard "reading and spelling ... addresses for family members and then directing [them] to read back the information in order for him to confirm or disconfirm its accuracy," id., as part of his "requests of several family members to annotate identifying information/procedures necessary to facilitate his ability to receive funds via Western Union." Id. Brooks "emphasized, to family members, that collect calls are an unnecessary and costly expense," id., and "reiterated that money could be electronically deposited into his account and he would then be able to telephone them directly," stating, in his words, that '"It's twenty cents a minute for 15

8

minutes; three dollars for a phone call if I call you direct.'" Id.

Dr. Johnson also addressed Brooks's head injury. Examining medical records, he found that "Brooks ... was evaluated after [an] industrial accident on March 26, 2008, via CT and MRI scans with no evidence of structural damage or swelling of the brain." Id. at 15. Moreover,

> "[He] was admitted [to the UAB Hospital] on March 26, 2008, with a Glasgow Coma Index of 15. The Glasgow Coma Scale provides a score in the range of 3 to 15. Patients who have scores of 3 to 8 are usually said to be in a coma; whereas scores of 13 to 15 are considered to be evidence of a Mild Traumatic Brain Injury. The amount of impairment from a head injury should be proportionate to its severity. A mild head injury should produce mild deficits, if any."

Id. at 14. Dr. Johnson concluded that "Brooks' report of retrograde amnesia is not supported by the aforementioned medical findings." Id. at 15.

9

Brooks returned to Alabama following his examination and evaluation in Fort Worth. On February 15, 2010, he was interviewed and evaluated by Susan Wardell, MSW, a licensed clinical social worker. Ms. Wardell interviewed Brooks again on June 2, 2010. In total, she spent approximately four hours with Brooks.

On June 3, 2010, this court held a competency hearing pursuant to 18 U.S.C. §§ 4241(c) & 4247(d). Prior to the hearing, the government filed a motion for leave to submit Dr. Johnson's report in lieu of his testimony.[4] Brooks "stipulate[d] to the authenticity of ... said report and ma[de] no objection to the presentation of the report without the presence of its author." Stipulation at 1 (Doc. No. 98). Given the stipulation and lack of objection,

---

4. According to the motion, "Dr. Johnson is currently serving in Iraq with the United States Armed Forces ... [and thus] is not available for the June 3, 2010, competency hearing." Mot. at 1 (Doc. No. 97).

10

the court granted the motion. Brooks offered the testimony of Ms. Wardell, who also filed a report following the hearing.[5]

Based on her evaluation, Ms. Wardell concluded that "Brooks is incompetent to stand trail." Ms. Wardell's Report at 3 (Doc. No. 101-1). She found that "Brooks exhibits cognitive deficits, chronic by history, but exacerbated by a closed head injury in March of 2008, approximately four months before his arrest in this case." Id. In so finding, she relies in part on Brooks's Full Scale I.Q. score of 64.[6] Her own evaluation of Brooks also indicated that: "[H]e can barely read at the kindergarten level. He is

---

5. Ms. Wardell had also previously filed a shorter affidavit discussing her evaluation of Brooks's competency to stand trial.

6. Ms. Wardell does not address Dr. Johnson's assessment that Brooks may have been malingering on his intelligence test. It is noteworthy, however, that Brooks had previously received a Full Scale I.Q. score of 64 on a test administered by Dr. Thomas Bolls.

11

unable to comprehend what he is able to read.  He sounds out long words, but does not know the meaning." Id. at 4.  Furthermore, she found that he "frequently demonstrates what is known as 'masking,'" explaining that, "Due to stigma and shame, most people with 'mild' mental retardation ... pretend to understand rather than admit they can't read or comprehend the circumstances in which they find themselves."  Id. at 5 (emphasis in original).

    Ms. Wardell also concluded that Brooks suffers from dementia and amnestic disorder due to head trauma.  Unfortunately, neither her testimony nor her report adequately explains the basis, nature or effect of the dementia finding.  With respect to amnestic disorder, she states that "Brooks is suffering from severe memory deficits, which are the effects of a closed head injury."  Id. at 6.  She questions whether he can assist his attorney because he cannot recall what happened during the alleged offense.  Ms. Wardell

12

did not address Dr. Johnson's statement that "Brooks' report of retrograde amnesia is not supported by ... [the] medical findings." Dr. Johnson's Report at 15. She also admits that, "Considering his memory deficits, [she] found it curious that [Brooks] was able to recall Dr. Johnson's name and the medication he wanted to prescribe, Seroquel." Wardell Aff. at 3 (Doc. No. 98-1).[7]

---

7. The court also notes that, on July 15, 2008, Brooks was apparently able to remember the events surrounding the alleged offense. At that time he gave his account of those events to Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Tim Fitzpatrick. See Report (Doc. No. 34-1). Brooks then explained that the firearm which forms the basis of this offense "belonged to Glenn who had his car in the morning." Id. at 2  "Brooks stated that he was very scared when he realized the gun was in [the car] because he knows that he is a convicted felon and knew the officers would not believe his story so that is why he tried to take the gun and hide it." Id. According to Agent Fitzpatrick's report, "Glenn also went to the police department to tell them it was his gun that he left in the car." Id.

Finally, Ms. Wardell found that Brooks is suffering from post-traumatic stress disorder (PTSD) and psychotic disorder not otherwise specified.[8] According to Ms. Wardell, the PTSD is the result of childhood sexual abuse, physical abuse, and the above-discussed head injury. Brooks reports that "when he is scared (intimidated) he just does whatever he is told." Ms. Wardell's Report at 7. Ms. Wardell apparently attributes this behavior, at least in part, to PTSD. She also identified the following symptoms of psychosis:

> "[Brooks] wakes believing he is being eaten by snakes, feels he has spiders crawling on him, or is reliving the accident [in which he

---

8. Dr. Johnson noted that, "Brooks was diagnosed with PTSD during a psychology screening with Dr. Brantley of the Alabama Department of Corrections on December 9, 2008." Dr. Johnson's Report at 15. However, he stated that, "Telephonic monitoring provided no indication of a [PTSD] diagnosis." Id. at 16. Nonetheless, his diagnosis of Brooks included "Rule Out Posttraumatic Stress Disorder." Id. at 12; see also id. at 16.

>suffered the head injury] and unable to breathe. When he is under stress in the jail, due to noise or too many lights, [he] becomes iritable and it si then that he reports hearing [the] voices ... [of] evil spirits."

Id. at 9. Ms. Wardell concludes that, "He is so easily intimidated that were he to testify, cross examination would be a farce." Id. at 11.

Significantly, Ms. Wardell did not suggest that Brooks is intimidated by defense counsel. Nor did she address Dr. Johnson's implicit finding that Brooks trusts his attorney. See Dr. Johnson's Report at 11 ("When asked how he views his defense counsel, he stated, 'I haven't known him long, but he seems like a good guy.'"); see also id. ("When asked what his attorney expects from him, he stated, 'To be honest and trustworthy.'").

## II. DISCUSSION

After weighing the expert reports and testimony, the court concludes that Brooks is not currently suffering from a mental disease or defect such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  In reaching this conclusion, the court takes into account, not only the substance of the testimony and reports, but the length of time Brooks spent under observation, evaluation and testing by Dr. Johnson and the psychology and correctional staff at the Fort Worth Federal Correctional Institution.  In particular, it is noteworthy that Dr. Johnson and his colleagues were able to monitor and evaluate Brooks outside of an interview setting (for example, during his phone conversations with his family he was heard "reading and spelling ... addresses for family members and then directing [them] to read back the information in order for him to confirm or disconfirm its

accuracy," Dr. Johnson's Report at 9), a perspective that was not available to Ms. Wardell during the approximately four hours she spent with him. Dr. Johnson also tested Brooks for, and found evidence of, malingering, an issue that was not directly addressed by Ms. Wardell.

To be clear, the court does not doubt that Brooks suffers from some cognitive deficits, or even that he is mildly mentally retarded. Nor is the court discounting the psychological impact of Brooks's head injury and childhood physical and sexual abuse. Rather, the court merely finds that these disabilities have not rendered him incompetent to stand trial.

In contrast, the court does question the veracity of Brooks's claim of amnesia. As noted above, Dr. Johnson found "Brooks' report of retrograde amnesia is not supported by the ... medical findings." Report at 15. He further indicated that tests suggested that Brooks was malingering with respect to his memory and

17

cognitive deficits. Although Ms. Wardell reached a different conclusion, her report also suggests that his memory loss is not as complete as he apparently contends. Finally, even if the court were to accept that Brooks has no memory of the alleged offense, "amnesia does not render a defendant automatically incompetent to stand trial." United States v. Rinchack, 820 F.2d 1557, 1569 (11th Cir. 1987).[9]

***

Accordingly, it is ORDERED and DECLARED that defendant Carlos L. Brooks is mentally competent to stand trial, that is, he is not currently suffering from a mental disease or defect rendering him mentally

---

9. It is noteworthy that, as stated above, Brooks previously gave his account of the events surrounding the alleged offense. See supra n.7. See also Rinchack, 820 F.2d at 1569 (In applying the competency standard to an amnesiac defendant, a court should consider, among other things, "Whether the crime ... can be properly reconstructed without the defendant's testimony, including any facts giving rise to a defense.").

incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

It is further ORDERED that, pursuant to 18 U.S.C. § 4241(f), the court's finding that defendant Brooks is mentally competent to stand trial shall not prejudice defendant Brooks in raising the issue of insanity as a defense to the offense charged and shall not be admissible as evidence in a trial on the offense charged.

DONE, this the 7th day of June, 2010.

　　　　　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE